AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
Fayetteville Division

In the Matter of the Search of )
Property located at 1400 Jean Street )
Springdale, Arkansas 72762 )   Case No. $S:22CM39$

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* **Property located at 1400 Jean Street, Springdale, Arkansas, 72762, more particularly described on "Attachment A".**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* **See "Attachment B".**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(B) | Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts: **See Affidavit of HSI Special Agent Gerald Faulkner**

■ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gerald Faulkner, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/26/22 @9:05am

_____
*Judge's signature*

City and state:  Fayetteville, Arkansas

Christy Comstock, United States Magistrate Judge
*Printed name and title*

## Affidavit in Support of Application for Search Warrant

I, Gerald Faulkner, being duly sworn, depose and state as follows:

1.        I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Resident Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with HSI since April 2009. As part of my daily duties as an HSI Special Agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.        This Affidavit is being submitted in support of an application for a search warrant for the premises located at **1400 Jean Street located in Springdale, Arkansas, 72762** the **"SUBJECT PREMISES"**. As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

**Statutory Authority**

3.      This investigation concerns alleged violations of Title 18, United States Code, Sections 2252A(a)(2)(B), Receipt of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography.

a)      18 U.S.C. 2252A(a)(2)(B) prohibits a person from knowingly receiving or distributing any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

b)      18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

c)      The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

d)      The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

e)      The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes

undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

f) The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

g) The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## Computers and Child Pornography

4. As described above and in Attachment B, this application seeks permission to search for records that might be found on the **SUBJECT PREMISES**, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the search and seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

5.     *Probable cause.* I submit that if a computer or storage medium is found on the **SUBJECT PREMISES**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file— for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e. The Internet allows users, while still maintaining anonymity, to easily locate other individuals with similar interests in child pornography; and websites that offer images of child pornography. Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

f. It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to internet customers by their ISP's. Although IP numbers are capable of changing over time, it is common for only one (1) unique IP number to be assigned to a given customer's computer at any given time. However, some IP numbers such as a Natting IP address can share multiple users at the same time but a specific utilized telephone number can further identify them. Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

g. Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

6.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium on the **SUBJECT PREMISES** because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.    As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and

durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning),

or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

## Background Regarding Peer-To-Peer File Sharing Networks

7.    Law Enforcement uses specialized peer-to-peer (P2P) software to locate computers offering to participate in the distribution of child pornography images and videos over file sharing networks. These networks are Internet based networks that allows millions of users to share (send and receive) files worldwide using publicly available peer-to-peer file sharing programs. The

BitTorrent, Gnutella and eDonkey networks are types of P2P programs often utilized by individuals seeking child pornography images and videos.

8. While examining P2P file-sharing programs, computers on these networks have software installed on them that facilitates the trading of images and videos. The software, when installed, allows the user to search for pictures, movies and other digital files by entering text as search terms. The search results presented to the user allow the user to select a file and then receive that file from other users around the world. Often these users can receive the selected digital file from numerous sources at once. The software can balance the network load and recover from network failures by accepting pieces of the digital file from different users and then reassembling the digital file on the local computer.

9. P2P networks can only succeed in reassembling the digital file from different parts if the parts all come from the exact same digital file. Multiple persons sharing one digital file can deliver different pieces of that file to the local software and the local software can ensure that a complete and exact copy can be made from the parts. Through use of the software, it has been confirmed that different copies of the same digital file can be named differently.

10. Computer software has different methods to ensure that two files are exactly the same. Your Affiant knows that the method used by these P2P networks involves a file encryption method called Secure Hash Algorithm Version 1 or SHA1. The SHA1 method is the Secure Hash Algorithm (SHA), developed by the National Institute of Standards and Technology (NIST), along with the National Security Agency (NSA), for use with the Digital Signature Standard (DSS) as specified within the Secure Hash Standard (SHS). The United States of America has adopted the SHA1 hash algorithm described herein as a Federal Information Processing Standard. Digital files can be processed by this SHA1 process resulting in a digital signature. By comparing these

signatures, it can be concluded that two files are identical with almost exact precision that greatly exceeds certainty.

11.     Your Affiant knows that P2P software systems use the SHA1 digital signature to verify the unique identity of individual files.  Users attempting to trade files on these file-sharing networks could choose to place files from their local computer in a shared file directory.  If that same user then starts the P2P software, that local computer could then calculate the SHA1 signature for each shared file and provide that information to other users wishing to obtain those files.

12.     Entering search terms in P2P programs can result in a list of SHA1 digital signatures from which to choose.  By using this type of search, law enforcement officers can compare the offered SHA1 signatures with SHA1 signatures known to belong to movies or images of known child pornography.  Once a matching set of digital signatures are identified, publicly available software can be used to request a list of Internet network computers that are reported to have the same images for trade or are participating in the trade of known images of child pornography.  This feature allows law enforcement officers to conduct undercover operations that involve images known to be actual and identified child pornography involving identified children.

13.     Additionally, your Affiant knows that P2P software may display the Globally Unique Identifier (GUID) identification number of computers offering to share files on the network.  A Globally Unique Identifier, or GUID, is a unique reference number used in software applications.  This GUID number is produced when some P2P software applications are installed on a computer.  While each generated GUID is not guaranteed to be unique, the total number of unique keys is so large that the probability of the same number being generated twice is negligible.  As such, based on an on-site comparison of GUID's, law enforcement can quickly determine with

a high degree of certainty if a computer located on scene is in fact the "suspect" computer offering to share files over the internet.

## Summary of Investigation to Date

14. On or about July 30, 2021, while utilizing Internet Crimes Against Children (ICAC) software tools, your Affiant identified a particular computer or internet capable electronic device, believed to be located in the Northwest Arkansas area, using an IP address of **72.204.96.185** that was making numerous files of suspected child pornography available for download on the Gnutella, EDonkey and BitTorrent P2P file sharing networks. The ICAC software program recorded the computer or internet capable electronic device located at IP address **72.204.96.185** had been making these files of suspected child pornography available from the time period between approximately June 8, 2021 through November 15, 2021. Utilizing ICAC software tools, your Affiant conducted a browse of the files being made available for download by the computer or the internet capable electronic device located at IP address **72.204.96.185** and obtained a file list for the time period of June 8, 2021 through November 15, 2021. Approximately four-thousand, one-hundred and thirty-three (4,133) files of suspected child sexual abuse material were flagged or captured from the multiple P2P networks during the reviewed timeframe. The list included file attributes including filename, download dates/times, file size, and hash values. Your Affiant observed the majority of the files on this list contained names or titles consistent with child pornography such as:

*"6YO - 10YO Girls Sucking Grown Mens BIG DICKS & taking cum in their little mouths! (Pthc) Kinderkutje 2011 20Clips.avi"*

*"12yo Girls Raped By Daddy - Preteen - Child Pornography - Illegal - PTHC - Pedo - R@ygold - Babyshvid - KDQuality - Zadoom - Lolita - QW.mpg"*

*"12yo Girls Raped By Daddy - Preteen - Child Pornography - Illegal - PTHC - Pedo - R@ygold - Babyshvid - KDQuality - Zadoom - Lolita - QW.mpg"*

Your Affiant's training and experience in child exploitation investigations over the last approximate twelve (12) years has revealed the term "PTHC" stands for preteen hardcore.

15. The HSI Cyber Crimes Center (C3) maintains and constantly updates a digital library of previously known and identified images and videos of child pornography. Similar to the digital library maintained by the National Center for Missing and Exploited Children (NCMEC), these libraries allow Special Agents to submit hash values of flagged child sexual abuse material and if matched to hash values located within the library, the HSI C3 can provide the actual child pornography files to Special Agents to view and confirm that the flagged files are child pornography as defined under Title 18, United States Code, Section 2256(8).

16. In August 2021, your Affiant sought assistance from the HSI C3 in cross-referencing the SHA1 hash values identified through the ICAC software tools which were contained either wholly or in part on the computer or electronic device located at **72.204.96.185** through the law enforcement library of known and previously identified/reviewed images and videos containing child pornography.

17. An internet search on the origin of the IP address **72.204.96.185** found it to be issued to the internet service provider Cox Communications. A federal summons was issued to Cox Communications in reference to IP address **72.204.96.185**. Documents received on or about September 8, 2021, from Cox Communications in reference to IP address **72.204.96.185** identified the IP as being "Active" and assigned to Lee Dobbs at 1400 Jean Street located in Springdale, Arkansas, 72762, the **SUBJECT PREMISES**. Cox Communications showed the internet services account was opened or started receiving services at the residence on June 5, 2021.

**NOTE**: The start or initiation of internet services at the **SUBJECT PREMISES** is just three days prior to the first flagged images/videos of suspected child pornography having

been accessed by the assigned and Cox Communications registered IP address **72.204.96.185.**

The subscriber information also listed a contact phone number ending in 0487.

18.    Pursuant to the request to the HSI C3 for files, on or about January 6, 2022, your

Affiant received multiple matching and viewable SHA1 hash files from the HSI C3 that were

contained either wholly or in part on the computer or electronic device located at **72.204.96.185.**

Between January and February 2022, your Affiant viewed and confirmed the majority of the

received files from the HSI C3 to be consistent with child pornography.  Your Affiant again

reviewed two (2) of the flagged files provided by the HSI C3 that the IP address **72.204.96.185**

was making publicly available, confirmed them to be videos of child pornography as defined in

Title 18, United States Code, Section 2256, and more specifically described them as follows:

a.    **47B975379C2901A2A0666A35A5BB15B41D9C3694.avi**

This video is approximately 22:59 in length and depicts an approximate eight (8) to ten
(10) year old prepubescent minor female who begins undressing herself until she is
completely naked on a bed.  The prepubescent minor female is then seen performing oral
sex on an adult male's penis.  The video then shows the same prepubescent minor female
laying completely naked on the bed while an adult male inserts his penis into her vagina
and has sexual intercourse until the conclusion of the video.

b.    **4F03620AE4FB255BA98D6BA5651E2D762F19977F.mpg**

This video is approximately 3:25 in length and depicts an approximate four (4) to six (6)
year old prepubescent minor female completely naked in the bathtub.  An adult male's
hand is seen entering the video and touching the child's vagina.  The prepubescent minor
female then performs oral sex on the adult male's penis until the conclusion of the video.

19.    In January 2022, your Affiant was contacted by an ICAC Task Force affiliate with

the Benton County, Arkansas Sherriff's Department who was conducting an online investigation

on the BitTorrent P2P file sharing network for offenders sharing known images and videos

containing child pornography.  During the course of the online investigation, a connection was

made between the ICAC Task Force affiliate's investigative computer and a computer or internet

capable electronic device running BitTorrent software from an IP address of **72.204.96.185**. On or about June 8, 2021 through June 9, 2021, four (4) separate connections to the target device successfully downloaded approximately nine (9) folders containing approximately two-hundred and twenty-one (221) video and images files obtained either wholly or in part from IP address **72.204.96.185**. The ICAC Task Force affiliate then viewed some of the files which were determined to be consistent with child pornography. The device at IP address **72.204.96.185**, at the time, was the only IP address which shared the contents for the files downloaded, and as such, the files were downloaded directly from this IP address. The ICAC Task Force affiliate, utilizing ICAC software tools, was able to determine your Affiant had previously flagged IP address **72.204.96.185** for initial investigative interest in July 2021 and then forwarded the BitTorrent lead information and downloads to the HSI ICAC Task Force for further investigation.

20.    In March 2022, your Affiant reviewed the files downloaded either partially or in their entirety by the ICAC Task Force affiliate from IP address **72.204.96.185** and confirmed the majority of them to contain child pornography as defined in Title 18, United States Code, Section 2256. Your Affiant more specifically described two (2) of these files as follows:

a.    **(Pthc) Lily 10Yo Takes It Fully - 8m39S.avi**

This video is approximately 8:39 in length and depicts an adult male, completely naked, kneeling on a bed with an approximate nine (9) to eleven (11) year old minor female who is completely naked from the waist down. The adult male is then seen performing oral sex on the minor female's genitalia. The adult male then inserts his penis into the vagina of the minor female and has sexual intercourse until the conclusion of the video.

b.    **(Pthc) Nablot 2 - Anal Beads 5yo !! New!!.avi**

This video is approximately 25:14 in length but only the first couple of seconds of the file appear to have been downloaded. The successfully downloaded portion of the video shows an approximate four (4) to six (6) year old prepubescent minor female completely naked on a bed laying on her stomach with her rear propped up off the bed. An adult's hand can be seen inserting what is believed to be some type of sex toy into the anus of the prepubescent minor female's anus.

21. In April 2022, your Affiant conducted additional open-source database queries which revealed on or about June 26, 2021, during the timeframe illegal child sexual abuse material was being flagged from IP address **72.204.96.185,** Lee Dobbs posted an event to his publicly accessible Facebook social media profile. The event was in reference to a "Celebration of Life Service" where Lee Dobbs requested all donations be sent to 1400 Jean Street in Springdale, Arkansas 72762, the **SUBJECT PREMISES.**

22. In April 2022, your Affiant conducted mobile surveillance of the **SUBJECT PREMISES** and observed a vehicle parked in the driveway of the residence bearing Arkansas license plate number 522XXX. Department of Homeland Security (DHS) database queries revealed the vehicle is registered to Ricky Dobbs with an address of 1400 Jean Street in Springdale, Arkansas 72762.

23. Your Affiant then conducted additional DHS and open-source database queries which revealed Ricky Dobbs is believed to be Ricky Dewayne Dobbs with a date of birth in 1968 and having been assigned the Social Security Administration (SSA) number ending in the last four numbers 9059. Online records show Ricky Dobbs is believed to be a relative of Lee Dobbs and currently residing at the **SUBJECT PREMISES**.

24. In August 2022, your Affiant received updated subpoenaed information from Cox Communications regarding the current internet subscriber paying for services at 1400 Jean Street in Springdale, Arkansas. The updated documents revealed as of 07/27/22, Lee Dobbs is still the being billed as the account holder at the **SUBJECT PREMISES**.

25. Cox Communications also included additional IP addresses assigned to access points through internet capable devices located at 1400 Jean Street in Springdale, Arkansas from the approximate time period of June 8, 2021 to May 3, 2022. Your Affiant ran the registered IP

addresses through ICAC software tools which revealed IP address 72.204.88.71 had approximately fifty-nine (59) files of interest, with many files containing titles consistent with child pornography, flagged through the Gnutella peer-to-peer file sharing network from approximately November 18, 2009 through November 16, 2021. IP address 72.204.130.32 had approximately one (1) file of interest flagged through the BitTorrent peer-to-peer file sharing network on or about March 22, 2022.

26. On August 23, 2022, your Affiant conducted mobile surveillance of the **SUBJECT PREMISES** and again observed the same vehicle bearing Arkansas license plate number 522XXX registered to Ricky Dobbs at 1400 Jean Street in Springdale, Arkansas parked in the driveway of the residence.

## **Conclusion**

27. *Necessity of On-site and Off-site examinations of entire computers or storage media.* Based on my experience and the training and experience of other agents, many of the items sought in this affidavit may be stored electronically. Based on my experience and consultation with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, based on my experience, I know, that while on-site examinations might provide basic evidence of the alleged crime, the execution of most warrants involving computerized information requires special agents to seize a portion or all of a computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified

computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

(a) Volume of evidence and time required for examination: Computer storage devices such as hard disks, diskettes, tapes and laser disks, can store the equivalent of thousands of pages of information. This sorting process can take up to several months to complete, depending on the volume of data stored. Therefore, in most cases, reviewing that information for items described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt solely via an on-site examination.

(b) Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a variety of forensic tools. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment, in most instances, is essential to a complete analysis.

28.    Therefore, authorization is sought in this application to seize, image, or otherwise copy any and all digital media as set forth in attachment "B" that is found on the premises to be searched, in order to examine those items for evidence. Furthermore, authorization is sought herein to conduct both on-site and subsequent off-site examinations of the electronic evidence as

authorized by Rule 41(e)(2) of the Federal Rules of Criminal Procedure. If it is determined that data has been seized that does not constitute evidence of the crimes detailed herein, the government will return said data within a reasonable time.

29.     Based on my experience and the training and experience of other agents involved with this investigation, your affiant knows that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexually explicit material. Among the reasons copies are maintained is because child pornography is illegal to openly purchase or obtain, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement. Because several people can share the **SUBJECT PREMISES** as a residence, it is possible that the **SUBJECT PREMISES** will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

30.     Based on the foregoing information, probable cause exists to believe there is located at **1400 Jean Street located in Springdale, Arkansas, 72762,** the **SUBJECT PREMISES**, evidence of violations of Title 18, United States Code, Sections 2252A(a)(2)(B), Receipt of Child Pornography, and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography.  Your Affiant prays upon his honorable court to issue a search warrant for the **SUBJECT PREMISES** for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of

violations of Title 18, United States Code, Sections 2252A(a)(2)(B), Receipt of Child Pornography

and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography.

Gerald Faulkner, Special Agent
Homeland Security Investigations

Affidavit subscribed and sworn to before me this **26** day of August, 2022.

Honorable Christy Comstock
United States Magistrate Judge

**ATTACHMENT A**
**Description of Property to be Searched**

Any and all structures and outbuildings to include vehicles located on the property or arriving on the property and curtilage of **1400 Jean Street located in Springdale, Arkansas, 72762**, the **SUBJECT PREMISES**. More particularly described as a one-story single-family residence constructed of white brick and what appears to be a metal roof. Affixed to the front of the home, next to the main entrance, are the clearly visible address numbers "1400", black in color and approximately 6 inches in height. The front door of the home faces East and sits on the corner of Jean Street and Mayes Avenue in Springdale, Arkansas.



## ATTACHMENT B
## Items to be Searched for and Seized

a.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

i.      Any computer, cellular phone, computer system, smart phones, computer tablets, and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, web cams, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to cellular telephones, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

ii.     Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

iii.    Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

iv.     Motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b.      Contact information or correspondence (online conversations/ Chats) pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, and/or the sexual solicitation of minors that were transmitted or received using a computer, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

i.      Electronic mail, internet chat logs, and electronic messages, social media messages, internet posts, blogs or any other internet-based contacts or communications, log in information to child exploitation forums, websites, and chatrooms;

ii. Envelopes, letters, books, ledgers, diaries, notebooks, notes, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or the solicitation of sexual conduct;

c. Peer-to-Peer software programs, including but not limited to eDonkey, BitTorrent and Gnutella.

d. Emails, log in information, credit card information, etc. showing ownership or use of the premises or device, subscriptions to internet or phone services, or account information and subscriptions to online applications known for child exploitation, paid sites, and social media;

e. Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.

f. Any and all computer hardware, to include data-processing devices containing central processing units, such as "desktop", "tower", "laptop" and "notebook" computers, hand-held electronic organizers, "personal digital assistants" and iPod's/iRiver's; "routers", "switchers" "Cellular Phones/Smart Phones" "Tablets" or any similar device which facilitates communication by sending transmissions to intended recipients and has the capability of creating logs; internal and external storage devices, including magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices such as smart-card readers. In addition, peripherals, equipment that send data to, or receive data from, computer hardware, but do not normally store user data, such as keyboards, mice, printers, scanners, plotters, video display monitors, modems, cables, and certain types of facsimile machines.

g. Any and all computer software and storage media to include any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information, such as diskettes, CD-ROM's, CD-R's, CD-RW's, DVD's, DVD-R's, DVD-RW's, magnetic tapes, ZIP disks, JAZ disks, Peerless disks, SparQ disks, ORB disks, optical disks, smart-cards, EPROMS, and digital memory media such as CompactFlash, SmartMedia, Sony Memory Sticks, and USB "thumb" or "key" drives, in addition to computer photographs, Graphic Interchange formats and/or photographs, cameras, digital cameras, slides, scanners or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in children, sexual activity with children, or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica.

h. Any and all computer-related documentation to include written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items. In addition to passwords, to include alphanumeric

strings, pass-phrases, password files, and similar decryption codes necessary to access data that is encrypted or otherwise inaccessible. Any and all security devices, to include physical keys, encryption devices, "dongles", and similar physical items needed to gain access to associated computer hardware.

i.       Any and all address books, mailing lists, lists of names and addresses of minors, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or minor contacted for sexual purposes.

j.       Any data that is encrypted and unreadable will not be returned unless law Enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offense specified above.

k.       In searching the data, the computer personnel may examine and copy all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized. In addition, the computer personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized. Finally, the computer forensic personnel may access any and all applications, email accounts, social media, internet search terms and history, and/or documents contained upon any said device to determine relevancy.